In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re Sylvia **FRIEDMAN'S TRUSTEES' PETITION.**

No 70–347.

United States District Court,
E. D. Pennsylvania.

Oct. 20, 1972.

As Amended Oct. 27, 1972.

Matthew W. Bullock, Jr., Blank, Rome, Klaus & Comisky, Goncer M. Krestal, Philadelphia, Pa., for petitioner.

Irving D. Friedman, New York City, for respondent.

## OPINION AND ORDER NO. 981

FULLAM, District Judge.

An issue which permeates many facets of this reorganization proceeding, and which has generated sharp differences of opinion among counsel, is the question of the extent of this Court's jurisdiction over companies which lease their rail facilities to the Debtor. Approximately 52% of the Debtor's entire rail system is operated by the Debtor under 44 long-term railroad leases from 41 domestic and foreign lessors. The system has been operated as a single unit. Many of the lessors are wholly or largely owned by the Debtor. It is probably true that most of the lessors have virtually no assets other than the rights retained in their leases to the Debtor.

The legal status of these leases in the present reorganization is discussed in Part I of this Court's Opinion in connection with the Park Avenue Property sales (Opinion and Order No. 974, 354 F.Supp. 717). Briefly, if the Trustees affirm the lease, the rentals called for in the lease are paid currently as an expense of administration. If the Trustees reject the lease, the Trustees either pay a reasonable charge for use and occupancy, or assert a lien against the lessor for deficit operations, depending upon profitability of the rail operations over the leased lines. A lease which is affirmed by the Trustees during reorganization may ultimately be rejected in the reorganization plan; a lease which is rejected by the Trustees cannot be resurrected in the reorganization plan, except by agreement.

All parties recognize that this Court has jurisdiction to prevent any interference with the Trustees' possession and use of leased lines, whether attempted by creditors of the Debtor or by creditors of the lessor company. The parties are not unanimous in their view of this Court's jurisdiction over sales of non-rail assets of leased lines, but since such sales are generally advantageous to the parties involved in a particular lease, such sales have frequently been approved, the liens against the property being transferred to the proceeds from the sales, and the proceeds being held in escrow pending further disposition. There is similar disagreement as to the jurisdiction of this Court to interfere with the exercise of their rights by creditors of the lessor companies. For the most part, bonds issued by the lessor companies are guaranteed by the Debtor, and the Debtor's payments under the lease are the sole source of funds for the payment of interest on these bonds, and the principal thereof at maturity. And, in most cases, the only creditors of the lessor companies are the bondholders, represented by their respective indenture trustees.

Early in these proceedings, it was recognized by most, if not all, of the responsible parties to the reorganization, that immediate resolution of the jurisdictional issue was neither necessary nor desirable. If it were determined that this Court has jurisdiction, the lessors' creditors could be restrained. If it were decided that this Court does not have jurisdiction, it is probable that most of the lessor companies would be forced into reorganization themselves; indeed, the lessors controlled by the Debtor would be included within the Debtor's reorganization proceeding.

It was also apparently recognized that, in many cases, rejection of a lease by the Trustees would probably force the

lessors into reorganization anyway, but it was apparently felt that no one would benefit by anticipating such a drastic outcome.

Accordingly, Order No. 170 was entered, largely by agreement. In that Order, this Court, without deciding the jurisdictional issues, restrained all creditors of lessor companies from taking any action to enforce their claims, except upon giving at least 14 days' notice to all parties in the reorganization proceeding, so that the parties would have an opportunity to be heard on the precise issue raised.

One Sylvia Friedman, a bondholder of one of the lessor companies, the New York Connecting Railroad, was apparently not satisfied with this arrangement. When the Trustees failed to pay rental under the New York Connecting lease, and New York Connecting was thereupon unable to pay interest on its bonds, which fell due on October 1, 1970, Mrs. Friedman requested the indenture trustee of the New York Connecting mortgage (Morgan Guaranty Trust Company) to bring suit against New York Connecting and obtain a judgment for the unpaid bond interest. The indenture trustee declined. Thereupon, Mrs. Friedman brought suit in the state court in New York, seeking to recover the unpaid bond interest from the New York Connecting. The Trustees of the Debtor then petitioned this Court for an order directing Mrs. Friedman to show cause why she should not be enjoined from prosecuting the New York action. A hearing on the Trustees' application was held on June 28, 1971. At the hearing, counsel for Mrs. Friedman (her husband) took the position that she should be allowed to proceed with her state suit. Although plaintiff's other counsel had filed an affidavit signifying that plaintiff had no intention of trying to enforce her judgment, if she should obtain one, the argument presented by her husband at the hearing seems to adopt a more sweeping view of Mrs. Friedman's rights.

Counsel for the indenture trustee took the position that this Court lacks jurisdiction to restrain Mrs. Friedman's suit, but that in any event, her suit would have no effect upon the reorganization, since, under the terms of the mortgage indenture, Mrs. Friedman would be precluded from attempting to enforce any judgment she might obtain (such action could be taken only by the indenture trustee on behalf of all bondholders, and the indenture trustee declined so to act). Counsel for the Trustees of the Debtor, invoking In re Pittsburgh Rys. Co., 155 F.2d 477 (3d Cir. 1946), cert. denied, Philadelphia Co. v. Guggenheim, 329 U.S. 731, 67 S.Ct. 89, 91 L.Ed. 632 (1946), contended that this Court has jurisdiction, and that Mrs. Friedman should be enjoined from proceeding in the state court in order to preclude a potential avalanche of similar litigation by individual bondholders, and because of the prospect that attempts would be made to enforce such judgments.

The matter has remained dormant and unresolved. Part of the delay is attributable to the hope that the Trustees might soon be in a position either to affirm or reject the New York Connecting lease; and part of the delay is attributable to inadvertence. Ultimately, by letter dated September 11, 1972, plaintiff's counsel brought the matter to my attention and requested disposition of the petition.

Although no injunctive order has been entered, and although plaintiff's counsel at the hearing insisted that Order No. 170 did not preclude his prosecution of the state action, and although plaintiff has never actually requested leave of this Court to proceed with the state action, it seems appropriate under the circumstances to adopt the suggestion of counsel for the Trustees, and to treat plaintiff's response to the Trustees' petition as if it were a request, pursuant to Order No. 170, for leave to proceed with the state suit.

■ I have concluded that the present petition and the record made thereon do not present a proper vehicle for resolution of the broad jurisdictional issues. I am persuaded that the indenture trustee is correct in its assertion that, under the terms of the mortgage indenture, any judgment which plaintiff might obtain in the New York litigation would not be enforceable by her, and that a bondholder who obtains such a judgment occupies no different position from any other bondholders. In short, it appears that suits such as that proposed by Mrs. Friedman, while perhaps constituting a minor annoyance to the lessor, are essentially pointless. Hence, it is not to be anticipated that any appreciable number of such suits would be brought. The present record discloses no justification for the Trustees' expressed fears in that regard. It will be time enough to resolve the troublesome jurisdictional issues when a genuine threat to the reorganization process is posed, or when more substantial claims are involved.